UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-CR-0466-CVE-3 |
| | ) |
| LARRY HUTTON, | ) |
| a/k/a Larry Charles Hutton, Jr., | ) |
| a/k/a Jerome Johnson, | ) |
| a/k/a Jerome Banard Johnson, | ) |
| a/k/a Jerome Barnard Johnson, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court are defendant Larry Hutton's motion to suppress (Dkt. # 62), plaintiff's response to defendant's motion to suppress (Dkt. # 64), defendant's motion to dismiss count three of the superseding indictment (Dkt. # 54) and plaintiff's response in opposition to defendant's motion to dismiss (Dkt. # 63). On November 16, 2021, a grand jury returned a ten-count superseding indictment in which defendant was charged with being a felon in possession of firearm and ammunition (count 3); possessing with intent to distribute phencyclidine (PCP), a Schedule II controlled substance (count 4); maintaining a drug-involved premises (count 5); and possessing a firearm in furtherance of drug trafficking crimes (count 6). Dkt. # 49.

I. **Defendant's Motion to Suppress**

Defendant moves, pursuant to Fed. R. Crim. P. 12(b)(3)(C), "to suppress the fruits of the unlawful execution of the search warrant from September 29, 2021[.]" Dkt. # 62, at 1.

a. *Relevant Factual Background*

On September 22, 2021, Tulsa police officer Brad Blackwell applied for the at-issue search warrant in the Cherokee Nation District Court. Dkt. # 64, at 2. Officer Blackwell's search warrant affidavit stated that he was "a duly cross-commissioned Muscogee (Creek) Nation Lighthorse." Dkt. # 64-2, at 1. Officer Blackwell's affidavit further stated that the residence to be searched was "in the historical reservation borders of the Muscogee (Creek) Nation"; however, in the next paragraph, he described the residence to be searched, including its exact address at 203 West 26th Place North, Tulsa, Oklahoma; provided a physical description of the residence; and stated that it is located within the historical borders of the Cherokee Nation. Id. Finally, Officer Blackwell reiterated his status as a duly commissioned Muscogee (Creek) Lighthorse, and stated that "the City of Tulsa, Oklahoma signed the Intergovernmental Cross-Deputization Agreement Between the United States, the Cherokee Nation, and Political Subdivisions of the State of Oklahoma on January 12, 2006, [and] the property where the warrant will be served is within the historical reservation of the Cherokee Nation." Id. at 2. That same day, a Cherokee Nation district court judge found that Officer Blackwell had made a sufficient probable cause showing, and issued a search warrant for 203 West 26th Place North, Tulsa, Oklahoma. Id. at 5. The search warrant stated that the residence to be searched was within "the historical Cherokee Nation," provided the exact address and a physical description of the residence, and re-stated that this residence is "within the historical borders of the Cherokee Nation." Id.

On September 29, 2021, Officer Blackwell, along with Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agent Brett Williams, and other Tulsa Police Department (TPD) officers executed the search warrant. Dkt. # 64, at 3. Before the officers entered the residence to

be searched, they came across defendant standing in the yard, who "approached them with a loaded firearm." Id. Officers arrested defendant, read him his Miranda rights, and defendant agreed to speak to Officer Blackwell. Id. Defendant admitted to possessing a firearm, acknowledged that he had previously been incarcerated and knew he had prior criminal convictions, and admitted to using and possessing PCP. Id. "While executing the search warrant, officers found [suspected PCP] inside the home, as well as additional vials, droppers, and a set of digital scales." Id. Defendant now moves to suppress the evidence seized pursuant to this search warrant. Dkt. # 62, at 1.

    *b.*    *Legal Standard*

The Fourth Amendment guarantees citizens the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands." Arizona v. Evans, 514 U.S. 1, 10 (1995). However, when evidence is seized in violation of the Fourth Amendment, courts have adopted a rule by which such evidence can be suppressed from being used in criminal trials. Herring v. United States, 555 U.S. 135, 139 (2009). "The rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" United States v. Leon, 468 U.S. 897, 906 (1984) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). Accordingly, "[w]here suppression [of the evidence] fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" Davis v. United States, 564 U.S. 229, 237 (2011) (quoting United States v. Janus, 428 U.S. 433 (1976)); see also United States v. Patterson, No. CR-20-71-RAW, 2021 WL 633022, at *3 (E.D. Okla. Feb. 18, 2021).

In light of the above rule, when law enforcement officials act in good faith with the reasonable belief that their actions do not violate the Fourth Amendment, the exclusionary rule does not apply. That is because "the exclusionary rule 'cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity.'" United States v. McCane, 573 F.3d 1037, 1042 (10th Cir. 2009) (quoting Leon, 468 U.S. at 919). In Leon, the Court specifically held that "the exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." Davis, 564 U.S. at 238–39 (quoting Leon, 468 U.S. at 922). This is because "[t]he error in such a case rests with the issuing magistrate, not the police officer, and 'punish[ing] the errors of judges' is not the office of the exclusionary rule." Id. at 239.

    c.    *The Validity of the Search and Seizure*

Defendant argues that the at-issue search warrant was unlawfully executed and the fruits of the search should be suppressed because, pursuant to McGirt v. Oklahoma, 140 S. Ct. 2452 (2020), the executing officers "had no authority as officers to perform the execution of the warrant, collect and seize evidence, or arrest Mr. Hutton." Dkt. # 62, at 7. Specifically, defendant argues that Officer Blackwell's "sworn affidavit refutes that he had been commissioned through any cross-deputization agreement to act as a police officer within the Cherokee Nation . . . [and] [d]iscovery has not revealed that any of the other named individuals that participated in the warrant execution [were] cross-deputiz[ed] with [the] Cherokee Nation." Id. Defendant further questions whether there is "sufficient evidence that the Cherokee Nation did actually engage in an agreement for cross-deputization with the City of Tulsa." Id. at 6.

Plaintiff responds that Officer Blackwell mistakenly referenced his Muscogee (Creek) cross-deputization, and that Officer Blackwell's conflicting statements, as to whether the residence's

location was within the historical bounds of the Muscogee (Creek) Nation or the Cherokee Nation, were also in error. Dkt. # 64, at 2, 4-5. Plaintiff argues that, pursuant to Illinois v. Gates, 462 U.S. 213, 236 (1983), Officer Blackwell's "scrivenor's errors" did not invalidate the search warrant, which was reviewed by a neutral magistrate who determined there was a sufficient basis for the warrant. Id. at 4. Plaintiff further responds that "[t]he City of Tulsa, the State of Oklahoma, the United States, and the Cherokee Nation have a [l]aw [e]nforcement [a]greement in effect [that] authorizes cross-deputization, Dkt. # 64, at 5; attaching as an exhibit the text of the agreement, as well as an addendum that added the City of Tulsa as a party to the agreement. Dkt. #64-1, at 1-22. Additionally, plaintiff responds that Officer Blackwell, along with the other TPD officers who executed the search warrant, were properly cross-deputized by the Cherokee Nation's Marshal's Service or the Federal Bureau of Indian Affairs (BIA); thus, the officers had authority to execute the search warrant issued by a Cherokee Nation district judge within the bounds of the Cherokee Nation.[1] Dkt. # 64, at 5-6. Finally, plaintiff responds that even if the warrant was invalid, the fruits of the search should not be suppressed because "the executing officers relied in good faith on the warrant's issuance by a neutral magistrate." Id. at 6.

    First, based on plaintiff's submissions, the Court finds that a valid cross-deputization agreement exists among the City of Tulsa, the State of Oklahoma, the United States, and the

---

[1] Plaintiff attached as an exhibit (Dkt. # 64–3) copies of the Cherokee Nation Marshal's Service and BIA cross-deputization authorization identification cards for thirteen of the seventeen officers who executed the search warrant. Dkt. # 64-3, at 1-14. Of the four remaining officers, three are TPD officers who are also cross-deputized, but were absent on leave, training, or other law enforcement operations; thus, plaintiff was unable to obtain copies of their identification cards before submitting its response (Dkt. # 64). Dkt. # 64, at 6 n. 1. The fourth officer was ATF agent Brett Williams, and defendant does not challenge Agent Williams's law enforcement authority.

Cherokee Nation. Dkt. # 64-1, at 1-22. And, the Court finds that plaintiff has made a sufficient showing that the officers executing the search warrant within the bounds of the Cherokee Nation had the requisite authorization to do so. Dkt. ## 64, at 6 n. 1, 64-3.

Second, the Supreme Court has found that reviewing courts should give "great deference" to a magistrate's decision to issue a warrant; "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation"; and courts should not invalidate warrants "by interpreting affidavit[s] in a hypertechnical, rather than commonsense, manner." Gates, 462 U.S. at 235-36 (internal quotations omitted and alterations in original). Thus, Officer Blackwell's errors in the affidavit do not justify invalidating the Cherokee Nation district judge's decision to issue a search warrant for a residence within the bounds of the Cherokee Nation.

Finally, even if the warrant were invalid, the executing officers' [r]eliance upon a warrant issued by a neutral magistrate creates a presumption . . . [that] the officer[s] [were] acting in good faith. United States v. Chambers, 882 F.3d 1305, 1310 (10th Cir. 2018) (citing United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985), and Leon, 468 U.S. at 925-26) (internal quotations omitted). However, such a presumption is overcome if a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Otero, 563 F.3d 1127, 1134 (10th Cir. 2009) (citing Leon, 468 U.S. at 922 n. 23) (internal quotations omitted). Here, the warrant was issued by a Cherokee Nation district judge, the residence to be searched was located in the Cherokee Nation, and each officer possessed law enforcement authority within the bounds of the Cherokee Nation. Accordingly, there is no indication that a reasonably well trained officer would have known that the search was illegal for lack of jurisdiction. In such a

circumstance, suppressing the fruits of the search serves no deterrent purpose, which makes the exclusionary rule clearly unwarranted. See Davis, 564 U.S. at 237.

In sum, the Court finds that defendant's motion to suppress should be denied.

## II. Defendant's Motion to Dismiss Count Three of the Superseding Indictment

Defendant moves, pursuant to Fed. R. Crim. P. 7(c)(1), to dismiss count three of the superseding indictment. Specifically, defendant argues that the superseding indictment "does not allege Mr. Hutton knew he had the relevant status when he allegedly possessed the firearms alleged[,]" which is a required element of the offense charged, that is, 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Dkt. # 54, at 2. Plaintiff responds that the superseding indictment is sufficient on its face because it "sets forth the elements of [the] offense by mirroring language in the charging statutes"; "contains a concise statement of the facts, including the date, time, and nature of illegal activity"; and "provides Hutton ample information and fair notice of the charge against which he must defend and enables him to assert a double jeopardy defense." Dkt. # 63, at 4.

The Tenth Circuit has held that an indictment is sufficient if it includes 1) the date of the offense; 2) tracks the language of the statute; and 3) states the elements of the offense. United States v. Salazar, 720 F.2d 1482, 1486 (10th Cir. 1983). In other words, "an indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997)).

18 U.S.C. § 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in

interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition[,]" 18 U.S.C. § 922(g)(1), and § 924(a)(2) outlines the punishment for § 922(g) violations. 18 U.S.C. § 924(a)(2). With respect to the required elements of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), the Supreme Court has held that "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019). For § 922(g)(1), the relevant category of persons is anyone who has been convicted in any court of a crime punishable by a term of imprisonment exceeding one year. See 18 U.S.C § 922(g)(1).

Count three of the superseding indictment states, in pertinent part, "[o]n or about September 29, 2021, in the Northern District of Oklahoma, the defendant . . . knowing he had previously been convicted of the following crimes punishable by imprisonment for terms exceeding one year . . . knowingly possessed in and affecting interstate commerce the following firearms and ammunition . . . ." Dkt. # 49, at 6. The superseding indictment 1) provides the date of the alleged offense, lists defendant's previous convictions, and lists the specific firearms and ammunition he allegedly possessed; 2) tracks the language of § 922(g)(1); and 3) states the elements of the offense. See Salazar, 720 F.2d at 1486. Specifically, the superseding indictment states that defendant 1) knowingly possessed a firearm; and 2) knew he belonged to a category of persons prohibited from possessing a firearm, that is, he knew he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year. Thus, the superseding indictment sets forth the essential elements of the offense, as articulated in Rehaif, 139 S. Ct. at 2200, puts defendant on notice of the charge against which he must defend, and enables him to assert a double jeopardy defense. See

Todd, 446 F.3d at 1067.  Consequently, the Court finds that the superseding indictment is sufficient and defendant's motion to dismiss should be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress (Dkt. # 62) and motion to dismiss count three of the superseding indictment (Dkt. # 54) are **denied**.

**DATED** this 6th day of January, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE